UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN SHUBECK,<br><br>             Plaintiff,<br><br>vs.<br><br>MCEWEN MINING INC., a Foreign Corporation; DOES 1-25 inclusive; and ROE CORPORATIONS 1-25 inclusive,<br><br>             Defendants. | Case No. 3:20-cv-00279-RCJ-CLB<br><br>**ORDER** |

Defendant moves to dismiss the case in its entirety on several grounds. It argues Plaintiff's employment discrimination claims are untimely, her common law torts are preempted by Nevada's workers' compensation act, she fails to state a claim for intentional infliction of emotional distress, and she improperly joined unnamed defendants. For the reasons stated herein, the Court grants this motion in part and denies it in part. The Court dismisses Plaintiff's intentional tort claims and the Doe Defendants but allows the remaining claims to proceed against Defendant.

**FACTUAL BACKGROUND**

In her operative complaint (ECF No. 5), Plaintiff alleges the following pertinent facts: She was employed by Defendant from April 25, 2018 to September 24, 2018 as a "Human Resource

Generalist." On or about May 11, 2018, her supervisor, Mr. Robert Mayfield, made "sexually suggestive remarks [to her] and pok[ed] her in the breasts." She reported this incident to the general manager, Mr. Jeff Snyder, who then told her to go home for that day. Between May 12, 2018 and May 30, 2018, Mr. Mayfield massaged Plaintiff's shoulders, groped Plaintiff's breasts, invited Plaintiff to bed, and made comments regarding rape. Plaintiff reported these incidents to Mr. Snyder on May 15, 2018 and again on May 30, 2018 as these incidents continued. Mr. Snyder told Plaintiff to work remotely until he could investigate the situation.

While Plaintiff was teleworking, an unspecified employee of Defendant informed Plaintiff that emails had been circulating about her of a sexual nature. On several occasions, Plaintiff received harassing phone calls to her work telephone number from anonymous people. Another anonymous person woke Plaintiff up during the night by banging on the front door of her home, which necessitated that Plaintiff change residences.

Plaintiff's employment continued on a teleworking basis until September 14, 2018, when her remote access was terminated. Before this occurred, Plaintiff made two requests for updates of the investigation to Mr. Snyder, who declined to provide a meaningful answer. Then, on September 24, 2018, Plaintiff's employment was terminated, but she was allowed to file an appeal with the human resources department. She did file such an appeal, which was denied on October 16, 2018 Vice President of Operations, Mr. Simon Quick, who also instructed her to return all company property. By October 22, 2018, Plaintiff returned all of the company's property that she possessed. Despite this return, Defendant had filed a police report that Plaintiff failed to return company property, which caused Plaintiff to be arrested upon a traffic stop on March 30, 2019. The charges were dropped upon learning that Plaintiff had returned the company's property.

Plaintiff now brings this case alleging that Defendant and Doe Defendants (who are "persons [or business entities] who may have or had a beneficial or other interest in Defendants at

or subsequent to the events which form the basis of this lawsuit), are liable to Plaintiff for six causes of action: gender discrimination, retaliation, assault, battery, intentional infliction of emotional distress (IIED), and negligent hiring, training, and supervision.

In the operative complaint, Plaintiff attaches the "Charge of Discrimination," which provides a summary of the facts alleged in the operative complaint, indicating that Plaintiff is seeking relief from Defendant for sex-based discrimination and retaliation from the Nevada Equal Rights Commission (NERC) and the Equal Employment Opportunity Commission (EEOC). (ECF No. 1 Ex. 1.) The charge indicates that the dates of discrimination were from April 30, 2018 to May 30, 2018. (*Id.*) The charge bears a stamp indicating that the NERC received the charge on August 27, 2019. (*Id.*) In this exhibit, Plaintiff also attached a letter from the NERC dated May 15, 2020, that indicates that Plaintiff has the right to sue Defendant for claims pursuant to NRS 613.420.

Plaintiff also attached an exhibit to her brief that she filed in opposition to this motion. This exhibit contains a letter from the NERC dated June 25, 2019. (ECF No. 24 Ex. 1.) It states that Plaintiff had been scheduled for an interview for August 20, 2019, "regarding the complaint [Plaintiff had] filed." It further states, "The purpose of the intake interview is to determine whether the allegations of your complaint fall within the jurisdiction of this Commission. You will be asked specific questions with regards to the allegations you have specified on your intake form."

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss

under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory, but also must allege the facts of the plaintiff's case so that the court can determine whether the plaintiff has any basis for relief under the legal theory the plaintiff has specified or implied, assuming the facts are as the plaintiff alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d

449, 454 (9th Cir. 1994). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

A plaintiff must timely exhaust any administrative remedies before bringing a Title VII claim to court. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). However, failure to exhaust non-judicial remedies is generally treated as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). The court should not dismiss a case based on an affirmative defense unless the elements of the defense appear on the face of the pleading to be dismissed. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Where an affirmative defense is not clear from the face of the complaint sought to be dismissed, it cannot be determined until (at least) the summary judgment stage; it cannot be treated as a quasi-summary-judgment matter under Rule 12(b). *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)).

## ANALYSIS

Defendant moves to dismiss the entire case. It first argues that Plaintiff failed to timely exhaust administrative remedies for the claims pursuant to Title VII of the Civil Rights Act of 1964 and NRS 613.310–613.435. Defendant then argues that Plaintiff's common law torts are

barred by Nevada's workers' compensation statutes. Defendant argues that Plaintiff's allegations fail to state a claim for IIED. Lastly, Defendant argues that Plaintiff improperly included Doe Defendants.

### 1. Timeliness of Exhaustion of Administrative Remedies

The parties agree that there is 300-day period by which Plaintiff needed to file a charge with the NERC and EEOC. The parties however dispute when a charge was first filed and whether the continuing violation doctrine applies. The official Charge of Discrimination is dated as received on August 27, 2019, (ECF No. 5 Ex. 1), and 300 days before that date is October 31, 2018. In her operative complaint, the only event that Plaintiff complains of that would have been after this date would be her discovery of the false police report on March 30, 2019, when she was arrested.

Plaintiff, however, claims that the intake form mentioned in the June 25 Letter from NERC is the date that the charge was first filed. 300 days before June 25, 2019 would be August 29, 2018. This would include many but not all of the events of which Plaintiff alleges in her operative complaint, including events that occurred while she was working remotely, her termination, the denial of her appeal challenging the termination, and the false police report as well as the subsequent arrest. Furthermore, the date of the intake form would have to be sooner than when the NERC issued its June 25 Letter to Plaintiff.

Courts have held that "a detailed, signed intake form . . . may serve as a charge to initiate administrative proceedings." *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999). To qualify as such a charge the intake form must contain "an allegation and the name of the charged party" and "must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

As the intake form could potentially serve as a charge by which many if not all of Plaintiff's claims for relief under Title VII, the Court finds that that this is not one of the "rare cases where a failure to exhaust is clear from the face of the complaint." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). The Court therefore denies this portion of the motion.

### *2. Workers' Compensation*

"The NIIA provides the exclusive remedy for employees injured on the job, and an employer is immune from suit by an employee for injuries arising out of and in the course of the employment." *Wood v. Safeway, Inc.*, 121 P.3d 1026, 1031 (Nev. 2005) (quotation omitted). The NIIA's exclusive remedy provision states: "The rights and remedies provided in chapters 616A to 616D, inclusive, of NRS for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive . . . ." NRS 616A.020(1). An injury is defined as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence." NRS 616A.265(1). An accident means "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." NRS 616A.030.

To fall within the NIIA's coverage, an injury must "both arise out of the employment and occur within the course of that employment." *Wood*, 121 P.3d at 1032. An injury arises out of the employment if a causal connection exists between the injury and "the nature of the work or workplace." *Id.* An injury occurs within the course of the employment if it occurs "at work, during working hours, and while the employee is reasonably performing his or her duties." *Id.*

The NIIA does not apply to an employer's intentional torts. *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 840 (Nev. 2000). To fall within the intentional tort exception, the employee must allege facts in the complaint showing the employer "deliberately and specifically intended" to injure the employee. *Id.* (citing *King v. Penrod Drilling Co.*, 652 F. Supp. 1331, 1334

(D. Nev. 1987)). "A showing of such intent on the part of an agent of [the employer] will not do. *King*, 652 F. Supp. at 1335.

For the intentional torts of battery, assault, and IIED, Plaintiff only argues that the intentional exception applies, relying on the intent of the employees. Plaintiff argues that their intent is sufficient. Plaintiff premises this contention on *Painter v. Atwood*, 912 F. Supp. 2d 962 (D. Nev. 2012) and *Switzer v. Rivera*, 174 F. Supp. 2d 1097 (D. Nev. 2001). *Painter*, however, is distinguishable from this case as the tortfeasor employee of that case was the alter ego of the defending company. *Painter*, 912 F. Supp. 2d at 966 ("Here, all of [the plaintiff's] claims are for intentional torts of the owner of a business . . . ."). Plaintiff's reliance on *Switzer* is also unpersuasive. While this case does support Plaintiff's argument, it does so by misapplying Nevada law without even citing *Conway*, where the Nevada Supreme Court made clear that only the intent of the employer is relevant for this exception. The Court therefore dismisses these claims with prejudice.

For the negligent hiring, training, and supervision claim, Plaintiff argues that her damages are not based upon an "injury" as defined by the statutes. In her brief, she premises this claim on her discharge and resulting emotional distress. (ECF No. 24.) Plaintiff is correct; these are not injuries as defined by the statutes as the discharge cannot be established by medical evidence and this type of stress is specifically excluded from the definition. NRS 616A.265(1), 616C.180(3)(c). The Court therefore declines to dismiss this claim inasmuch as she is claiming damages premised upon her discharge and any resulting stress. The Court does not presently rule on the merits of this claim except to state that preemption under NIIA does not bar it.

While Plaintiff only bases this claim on the discharge and related stress in her response, she does not so limit the claim in her operative complaint. (ECF No. 5.) For example, she states that Defendant needed, for example, to "provide training for management . . . regarding sexual

harassment." (*Id.* at 11.) Plaintiff then states that such failures caused unspecified "injuries as alleged in this Complaint." (*Id.*) Inasmuch as Plaintiff premises this claim upon the alleged battery by one of Defendant's employees in the Complaint, the Court finds that the NIIA preemption clause prevents such a claim, and Plaintiff provides no argument to the contrary. *See Wood*, 121 P.3d 1026, 1037 (Nev. 2005) (holding that the NIIA preemption clause applied to a claim for negligent hiring, failure to train, and failure to supervise against a defending company based upon a tortfeasor employee who sexually assaulted the plaintiff employee).

### 3. *Intentional Infliction of Emotional Distress*

As an additional basis for dismissing the IIED, Defendant contends that Plaintiff has failed to allege facts sufficient to show that Plaintiff experienced severe emotional distress. Defendant is correct that this is an element of IIED under Nevada law and Plaintiff does not explicitly state that she experienced emotion distress in her complaint. The elements of a cause of action for intentional infliction of emotional distress are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981) (citation omitted). While Plaintiff never specifically stated that she was emotionally distressed, the Court finds that it is a reasonable inference from her allegations. For example, she alleged that because Defendant filed a false police report that Plaintiff was jailed for eleven days. The Court therefore declines to grant Defendant's motion on this basis. Nonetheless, the Court still dismisses this claim because of the NIIA preemption clause.

### 4. *Doe Defendants*

Lastly, Defendant seeks dismissal of Doe Defendants 1–25 and Roe Corporations 1–25 as improper for federal court. Defendant correctly argues, "Generally 'Doe' pleading is improper in federal court." *McMillan v. Dep't of Interior*, 907 F. Supp. 322, 328 (D. Nev. 1995). This is

because "[t]here is no provision in the Federal Statutes or Federal Rules of Civil Procedure for use of fictitious parties." *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970). Doe pleading is only proper "where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

> In the operative complaint, Plaintiff states the following regarding these defendants:
>
> Defendants DOES 1–25 and ROE CORPORATIONS 1–25 are fictitious names referring to persons, corporations, partnerships, limited liability companies, joint ventures and/or other entities who may have or had a beneficial or other interest in Defendants at or subsequent to the events which form the basis of this lawsuit. Plaintiff will request leave of this Court to amend the complaint to substitute the actual names of these unknown parties at such time as the true names of DOES 1–25 become known.

Plaintiff provides no other statement in the complaint regarding these unknown entities' involvement in this case. It is unclear how these defendants, whose only connection to the case according to her complaint is that they had some sort of "beneficial or other interest in" Defendant McEwen. In her brief, she claims that these defendants are proper because they may be supervisors or "other unknown persons at her workplace who contributed to her harms." However, she has provided names of her supervisors, who allegedly harassed her, terminated her employment, and denied her appeal, and she chose not to name them as defendants. Plaintiff therefore has not provided any argument as to how these unnamed defendants are proper parties to this action. The Court therefore dismisses Doe Defendants 1–25 and Roe Corporations 1–25.

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (ECF No. 9) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's claims of Sex Discrimination and Retaliation shall proceed.

IT IS FURTHER ORDERED that Plaintiff's claims of Battery, Assault, and Intentional Infliction of Emotional Distress are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's claim of Negligent Hiring, Training, and Supervision shall proceed only inasmuch as it is based upon damages related to her termination of employment and resulting emotion distress.

IT IS FURTHER ORDERED that Doe Defendants 1–25 and Roe Corporations 1–25 are DISMISSED.

IT IS SO ORDERED.

Dated January 26, 2021

_____
ROBERT C. JONES
United States District Judge